```
           UNITED STATES DISTRICT COURT FOR THE
            WESTERN DISTRICT OF NORTH CAROLINA
                     CHARLOTTE DIVISION
                       3:06CV322-MU-02
```

BRANDON CABBOTT JONES,    )
    Petitioner,           )
                    )
        v.                    )        **O R D E R**
                    )
MARVIN L. POLK, Supt.,    )
    Respondent.           )
_____)

**THIS MATTER** is before the Court on the petitioner's "Petition Under 28 U.S.C. §2254 For Writ Of Habeas Corpus . . . ," filed August 3, 2006 (document # 1); on the respondent's "Motion For Summary Judgment," filed August 18, 2006 (document # 4); and on the petitioner's "Response To Motion For Summary Judgment And Cross Motion For Summary Judgment," filed September 5, 2006 (document # 7).

For the reasons stated herein, and for the further reasons set forth in the respondent's Motion for Summary Judgment, the respondent's Motion will be <u>granted</u>; the petitioner's Cross Motion for Summary Judgment will be <u>denied</u>; and this matter will be <u>denied</u>.

                **I.   FACTUAL AND PROCEDURAL BACKGROUND**

As counsel for both the petitioner and the respondent agree, the relevant evidence shows that the petitioner and two other men armed themselves and invaded a home for the purpose of committing

a robbery. Once in the home, the three conspirators held the three residents-- Mr. and Mrs. Hunt (local mill workers) and their son-- at gunpoint and demanded money and drugs from them. Although it is not entirely clear which conspirator took $2,500 in cash (money received from an insurance settlement) and items of jewelry from the Hunts' son, upon the petitioner's subsequent arrest, he was found in possession of more than half of the cash and the missing jewelry.

During the course of the invasion/robbery, the petitioner held Mr. Hunt and his son at gun point while his co-conspirators took Mrs. Hunt to another room in order to search for more money and drugs. Shortly thereafter, a struggle ensued between one of the petitioner's co-conspirators and Mr. and Mrs. Hunt, during which the petitioner continued to hold his gun on their son, thereby preventing him from assisting his parents. In the course of that struggle, Mr. Hunt and one of the petitioner's co-conspirators were shot.

The petitioner and his co-conspirators fled the home, taking a brief case along with them. Eventually, the two able-bodied conspirators drove the wounded conspirator back to Charlotte to an Emergency Room, where they left him alone. It was determined that the abandoned conspirator had died from his wounds prior to his arrival at the hospital. That afternoon, Mr. Hunt also died from his wounds. Three days following the shootings, the petitioner was

arrested at a Motel in Charlotte.

The jury also heard evidence that the defendant had committed another home invasion, prior to the one involving the shooting. During that invasion/robbery, the defendant held a gun on a woman, cursed her and ordered her to the floor as another man entered her home, went through her belongings and stole her jewelry and driver's license. The defendant also threatened to kill the victim and kicked her in her back when she failed to produce money for him. Before leaving, the men ordered the victim to undress and get into her closet.

Consequently, the jury convicted the petitioner of two counts of first-degree murder under North Carolina's felony murder rule. On August 15, 2001, the Superior Court of Gaston County sentenced the petitioner to a term of life imprisonment without parole on his conviction for the murder of his co-conspirator, and to death on his conviction for the murder of the other victim.

The petitioner timely appealed his death sentence to the Supreme Court of North Carolina. Although the State Supreme Court affirmed the petitioner's conviction, it vacated his death sentence and remanded that matter for a new sentencing hearing. Consequently, on March 8, 2004, the Superior Court conducted a new sentencing hearing, during which the petitioner was re-sentenced to a consecutive term of life imprisonment.

After being re-sentenced, the petitioner appealed his case to

the North Carolina Court of Appeals. By an Order filed February 1, 2005, the State Court of Appeals found no error, and affirmed the petitioner's sentences. On May 4, 2005, the State Supreme Court denied the petitioner's Petition for discretionary review.

In addition to the foregoing, counsel for the parties also agree that inasmuch as the petitioner did not seek certiorari review in the United State Supreme Court, the petitioner's convictions and sentences became final on August 2, 2005, that is, at the expiration of the 90-day period during which the petitioner could have sought that review. Equally critically, the parties agree that the petitioner's one-year limitations period under the Antiterrorism and Effective Death Penalty (the "AEDPA") expired on August 2, 2006.

In any case, on August 3, 2006, the petitioner's Habeas Petition was filed. By his Petition, the petitioner raises the single claim that his constitutional rights were violated by the Court's imposition of two consecutive life sentences without parole since he did not kill or intend to kill either of the victims.

On August 18, 2006, the State filed an Answer to the Petition, arguing that this action is subject to summary dismissal on statute of limitations grounds. Also on that date the State filed a Motion for Summary Judgment. There, the State contends that the petitioner's Petition is time-barred because it was not filed until August 3, 2006--that is, one day after the expiration of his one-

year deadline.

In the alternative, however, the State argues that the petitioner's claim of an unconstitutional sentence is not supported by the relevant U.S. Supreme Court precedent. Therefore, in order for this Court to conclude that the petitioner's two life sentences are disproportionate to his crimes, the Court would have to announce a new rule of constitutional law which, in any case, could not retroactively be applied to the petitioner's case.

Thereafter, on September 5, 2006, the petitioner filed a "Response To Motion For Summary Judgment And Cross Motion For Summary Judgment." There, <u>habeas</u> counsel establishes that in an attempt to meet this one-year deadline, on July 31, 2006, he submitted the petitioner's <u>Habeas</u> Petition to this Court, via certified Mail; and that such Petition was received in the Clerk's Office on August 1, 2006. Thus, habeas counsel contends that the instant Petition should be deemed timely filed.

For its part, the undersigned has reviewed the parties' filings and determined that although the instant Petition must be construed as timely filed, such fact is of little consequence since, ultimately, the petitioner has failed to demonstrate that he is entitled to any relief on his claim.

## II. **ANALYSIS**

### 1. **The instant Petition was timely filed**.

Turning first to the timeliness of this Petition, as the State

now has conceded, habeas counsel credibly has established that the instant Petition was received by this Court on August 2, 2006--one day prior to the expiration of the petitioner's one-year deadline. Accordingly, notwithstanding the fact that such document was not filed in the petitioner's case until after the passage of that deadline, the Court must construe the Petition as timely filed. That is, habeas counsel took appropriate action to ensure that the petitioner's Petition was received by this Court prior to the expiration of his AEDPA deadline; therefore, the instant Petition must be deemed to have been filed as of the date that it was received by the Court.

### 2. **The petitioner cannot establish that his sentences are unconstitutional**.

As was noted, habeas counsel raises the sole claim that the petitioner's sentences are unconstitutionally disproportionate to his actual conduct in that he was not the person who actually killed or intended to kill the victims in his case. Specifically, counsel for the petitioner argues that it was the petitioner's co-conspirator who shot the two victims. Therefore, habeas counsel argues that since the petitioner was convicted of the murders pursuant to the felony-murder rule, he should not have received life sentences without parole, particularly for the murder of his co-conspirator.

However, habeas counsel's argument is not based upon an assertion that the trial Court erroneously applied North Carolina's

felony-murder rule. Rather, habeas counsel simply argues, without directly addressing the applicable standard of review, that the petitioner's sentences are unconstitutional primarily because "North Carolina's Felony Murder Rule is the most draconian among the fifty states."

Nevertheless, habeas counsel concedes that the constitutional provisions to which he points contain only a "narrow" basis for proportionality review such as he is seeking in this non-capital case; and that the basis for relief in such a case is limited to a determination that the sentence imposed is grossly disproportionate to the offense conduct. Ultimately, however, the Court has determined that the petitioner cannot prevail on this claim.

To begin, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. §2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. . . ."

Id. (internal citations omitted).

The Supreme Court has explained that a State court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

The applicable standard of review is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.23d 445, 455 (4th Cir. 1999).

When applying the foregoing principles to the petitioner's claim, this Court cannot conclude that the State court's approval of the petitioner's life sentences was an unreasonable application of clearly established federal law, or that such determination has resulted in a decision that was based upon an unreasonable application of the facts in light of that law. Indeed, the Supreme Court expressly has stated that felony murder without specific

8

intent to kill is "a crime for which 'no sentence of imprisonment would be disproportionate.'" Harmelin v. Michigan, 501 U.S. 957, 1004 (1991).

Consequently, inasmuch as the petitioner was convicted of felony murder, and he received sentences which fall short of the death penalty for both convictions, such life sentences simply do not run afoul of the constitution. Moreover, even considering such sentences in light of the factors announced by the Supreme Court in Solem v. Helm, 463 U.S. 277, 290-92 (1983), it is clear that this Court has no basis upon which to disturb the State Court's decision.

Based upon the evidence in this case, habeas counsel cannot establish that there is an inference of gross disproportionality between the petitioner's conduct and his life sentences. Rather, the petitioner's actions of holding the robbery victims at gun point, precluding one victim from assisting his father during a struggle, fleeing the scene of the two shootings with cash and jewelry, failing immediately to seek medical attention for his co-conspirator, and remaining at large while living off of the proceeds of his crimes is ample justification for his consecutive sentences of life imprisonment without parole.

However, even if such sentences had raise an inference of gross disproportionality, habeas counsel still failed to show that the petitioner's sentences are in excess of those which other

similarly situated felony murderers receive in North Carolina courts. Likewise, habeas counsel has failed to demonstrate that a majority of other states would impose a lesser sentence upon their similarly situated defendants. Thus, having failed to prevail on all three of the prongs of the subject test, the petitioner ultimately cannot establish that he is entitled to relief on his claim.

### III. CONCLUSION

The petitioner's timely-filed claim of a unconstitutional sentences is foreclosed by relevant U.S. Supreme Court precedent. Therefore, the State's Motion for Summary Judgment must be granted and the petitioner's Cross Motion for Summary Judgment must be denied.

### IV. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The State's Motion for Summary Judgment is **GRANTED;**

2. The petitioner's Cross Motion for Summary Judgment is **DENIED;** and

3. The petitioner's Petition for a Writ of <u>Habeas Corpus</u> is **DENIED**.

**SO ORDERED.**

Signed: May 1, 2007

Graham C. Mullen
United States District Judge